UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

CORSTAR COMMUNICATIONS, LLC,

                                    Plaintiff,

            -against-

CORSTAR BUSINESS COMPUTING CO., INC. and
JOHN F. SITAR,

                                    Defendants.
-------------------------------------------------------------------X

Civil Action No.

**COMPLAINT**

**07 CIV. 4101**

**WP4**

Plaintiff, Corstar Communications, LLC ("Plaintiff"), by its attorneys, Corrigan & Baker, LLC, as and for its complaint against Defendants, Corstar Business Computing Co., Inc. ("Defendant Corstar") and John F. Sitar ("Defendant Sitar"), alleges:

## JURISDICTION AND VENUE

1. This is a civil action seeking damages and injunctive relief arising out of and related to a series of business transactions between Plaintiff and Defendants occurring in the State of New York.

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a) (*Diversity of Citizenship*).

3. This Court has personal jurisdiction over Defendant Corstar because Defendant Corstar is a New York corporation.

4. This Court has personal jurisdiction over Defendant Sitar because numerous and substantial acts alleged herein with respect to Defendant Sitar occurred in New York and this District. Moreover, Defendant Sitar was aware, or should have been aware, that his conduct would cause injury in New York and to residents of New York.

5. Venue is proper in this District under 28 U.S.C. §1391(a), (b) and (c) because numerous and substantial acts alleged herein occurred in New York and in this District. Furthermore, defending an action in the Southern District's White Plains Courthouse cannot be deemed an inconvenience to Defendants since Defendants are currently prosecuting a separate cause of action in the Ninth (9th) Judicial District of the New York State Supreme Court (i.e. White Plains, New York).

## PARTIES

6. Plaintiff is a limited liability company organized under the laws of New York State, with its principal place of business located at 40 Saw Mill River Road, Hawthorne, New York 10532.

7. Plaintiff is in the business of providing information technology ("IT") services and products, ranging from needs assessment to implementation of processes and equipment necessary to accomplish client goals.

8. Upon information and belief, Defendant Corstar is a corporation organized under the laws of New York State, with its principal place of business located at 513 Dartmoor Way SW, Ocean Isle Beach, North Carolina 28469.

9. Upon information and belief, at all times relevant herein, Defendant Corstar operated and continues to operate a business providing, inter alia, IT consulting services and/or products.

10. Defendant Sitar is an individual who, upon information and belief, resides at 513 Dartmoor Way SW, Ocean Isle Beach, North Carolina  28469.

11. Upon information and belief, Defendant Sitar, at all times relevant herein, is an officer of Defendant Corstar.

12. Upon information and belief, Defendant Sitar, at all times relevant herein, is a director of Defendant Corstar.

13. Upon information and belief, Defendant Sitar, at all times relevant herein, is a shareholder of Defendant Corstar.

**COUNT ONE**

**BREACH OF FIDUCIARY DUTY: IMPROPER DISTRIBUTION OF PROCEEDS RECEIVED UNDER A PROMISSORY NOTE**

14. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 13 as if fully set forth herein.

15. Upon information and belief, in or about the year 2002, Defendant Corstar restructured its liabilities with its major creditors, as set forth in written settlement agreements.

16. In connection therewith, in or about May 2002, Defendant Corstar, as borrower, and Plaintiff, as lender, entered into a $250,000 Line of Credit Loan and Security Agreement (the "LOC"; annexed hereto as **Exhibit A**), whereby Plaintiff agreed to make loans from time to time to Defendant Corstar.

17. Between approximately May 31, 2002 and June 5, 2002, Defendant Corstar requested and received from Plaintiff loan advances under the LOC in the total amount of $153,025 (the "Advances").

18. Pursuant to Article VII of the LOC, Plaintiff was granted an option to convert, at any time, all or any portion of the outstanding balance due from Defendant Corstar under the LOC into shares of common stock of Defendant Corstar.

19. As set forth in Section 7.03 of the LOC, for purposes of the conversion option the parties valued all of the issued and outstanding shares of Defendant Corstar at $300,000.

20. Accordingly, the total number of shares that Plaintiff was entitled to acquire by conversion under Article VII of the LOC was determined by calculating the total amount of the Advances as a percentage of $300,000.

21. On or about August 1, 2003, Plaintiff duly exercised its option under Article VII of the LOC to convert the entire outstanding principal loan balance thereunder, $153,000, into the common stock of Defendant Corstar (the "Conversion"; See the conversion notice annexed hereto as **Exhibit B**).

22. As a result and as of the date of the Conversion, Plaintiff acquired a 51% equitable and legal stock ownership interest in Defendant Corstar.

23. As a result and as of the date of the Conversion, Plaintiff acquired a majority and controlling interest in Defendant Corstar.

24. Upon information and belief, Defendant Sitar owns the remaining 49% equitable and legal stock ownership interest in Defendant Corstar.

25. On or about January 29, 2004, Defendant Corstar, as seller, and Plaintiff, as purchaser, entered into an <u>Asset and Business Purchase Agreement</u> (the "APA"; annexed hereto as **Exhibit C**).

26. In accordance with the terms of the APA, Plaintiff acquired all of the assets of Defendant Corstar.

27. The APA provided for a purchase price of $290,000, to be paid by Plaintiff to Defendant Corstar pursuant to the terms of a promissory note (the "Note").

28. The Note was duly executed by Plaintiff and delivered to Defendants on January 29, 2004 (A copy of the Note is annexed hereto as **Exhibit D**).

29. The Note is payable in 58 consecutive monthly payments of $5,000 each to Defendant Corstar, commencing on February 1, 2004 (inadvertently and mistakenly typed in the Note as "2003") and ending on November 1, 2008 (inadvertently and mistakenly typed in the Note as "2007").

30. Plaintiff has paid Defendant Corstar a total of $195,000 under the Note as of the date hereof.

31. As a 51% shareholder of Defendant Corstar, Plaintiff is entitled to <u>51%</u> of all distributions to shareholders made by Defendant Corstar.

32. Upon information and belief, Defendants distributed 100% of the proceeds received under the Note to Defendant Sitar, as a shareholder distribution.

33. Defendants did not make a shareholder distribution to Plaintiff of 51% of the proceeds received by Defendant Corstar under the Note.

34. Therefore, the said shareholder distribution to Defendant Sitar was improper.

35. As an officer and director of Defendant Corstar, Defendant Sitar owes a fiduciary duty to Defendant Corstar's shareholders, including to Plaintiff.

36. The said improper shareholder distribution constituted a breach of Defendant Sitar's fiduciary duty to Plaintiff.

37. As a result of the foregoing, Plaintiff has suffered damages in an amount to be determined by the Court, but not less than 51% of the proceeds received by Defendant Corstar under the Note, or $99,450.

**COUNT TWO**

**BREACH OF THE LOC: FAILURE TO PAY PRINCIPAL**

38. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 37 as if fully set forth herein.

39. In the event Defendants assert herein that Plaintiff's exercise of the Conversion Option was ineffective and, as a result, obtain an Order of the Court herein denying Plaintiffs the relief demanded under Count One above, then Plaintiffs are entitled, as alternative relief, to Judgment against Defendants for the full amount of the Advances made under the LOC, in the principal amount of $153,025.

**COUNT THREE**

**BREACH OF FIDUCIARY DUTY: IMPROPER DISTRIBUTION OF**

**OTHER PROCEEDS**

40. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 39 as if fully set forth herein.

41. Upon information and belief, Defendants have made distributions to shareholders other than, and in addition to, the distributions set forth in Count One above (the "Other Shareholder Distributions").

42. Plaintiff has not received any portion of the Other Shareholder Distributions.

43. Plaintiff is entitled to 51% of the Other Shareholder Distributions.

44. Upon information and belief, Defendant Sitar received 100% of the Other Shareholder Distributions.

45. Therefore, the Other Shareholder Distributions were improper.

46. The Other Shareholder Distributions constituted a breach of Defendant Sitar's fiduciary duty to Plaintiff.

47. As a result of the foregoing, Plaintiff has suffered damages in an amount to be determined by the Court.

## COUNT FOUR

## FRAUD IN THE INDUCEMENT OF THE LOC

48. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 47 as if fully set forth herein.

49. The conversion option set forth in Article VII of the LOC (the "Conversion Option") is a material term of the LOC.

50. Defendants offered the Conversion Option to Plaintiff as an inducement for Plaintiff to enter into the LOC and provide Defendant Corstar the Advances thereunder.

51. Defendants' statements and actions offering and agreeing to the Conversion Option were false, in that Defendants did not intend to honor the Conversion Option

by making appropriate shareholder distributions to Plaintiff after Plaintiff exercised the Conversion Option and became a shareholder of Defendant Corstar.

52. Defendants knew their statements and actions were false when Defendants made them.

53. Defendants knew that Plaintiff, in agreeing to enter into the LOC and provide Defendants the Advances thereunder, was relying on Defendants' statements and actions.

54. Plaintiff relied on Defendants' statements and actions to Plaintiff's detriment.

55. Plaintiff would not have entered into the LOC or provided Defendants the Advances thereunder if the LOC did not contain the Conversion Option.

56. Plaintiff would not have entered into the LOC or provided Defendants the Advances thereunder if Plaintiff knew that Defendants would not honor the Conversion Option by making appropriate shareholder distributions to Plaintiff after the Conversion Option was exercised.

57. Defendants fraudulently induced Plaintiff to enter into the LOC and to provide Defendants the Advances thereunder.

58. As a result of the foregoing, Plaintiff has suffered damages in an amount to be determined by the Court.

## COUNT FIVE

### BREACH OF THE LOC: FAILURE TO PAY INTEREST

59. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 58 as if fully set forth herein.

60. Pursuant to the terms of the LOC, Defendant Corstar is required to pay Plaintiff interest on the Advances, at the rate of interest set forth in the LOC.

61. Defendant Corstar has failed to pay Plaintiff all or any portion of the interest which has accrued on the Advances under the LOC.

62. Defendant Corstar's obligation to pay the said interest is past due.

63. As a result of the foregoing, Plaintiff has suffered damages in an amount to be determined by the Court.

**COUNT SIX**

**BREACH OF THE ASSET AND BUSINESS PURCHASE AGREEMENT**

64. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 63 as if fully set forth herein.

65. Pursuant to the APA, Defendants conveyed to Plaintiff "all of [Defendant Corstar's] right, title and interest in and to the assets of the [Defendant Corstar's] Business," including, inter alia, as follows:

66. Under Section 1.1(a) of the APA, Defendants specifically transferred to Plaintiff "*all cash, bank accounts, security deposits, prepaid items, unbilled costs and fees in the connection with the Business*…."

67. Under Section 1.1(e) of the APA, Defendants specifically transferred to Plaintiff "*any and all formulae, trade secrets, patents, trademarks, trade names, inventions,…..and other intellectual property now used by Seller in connection with the Business*,…"

68. Under Section 1.1(f) of the APA, Defendants specifically transferred to Plaintiff "*all franchise, permits and licenses, registration, contracts, agreements and commitments, customer lists*....."

69. Under Section 1.1(g) of the APA, Defendants transferred to Plaintiff "*all rights or choses in action arising out of occurrences before or after the Closing*."

70. Under the APA, there were no excluded assets.

71. Upon information and belief, an account known as the Peter Mill account was an existing account of Defendant Corstar as of the date of the APA.

72. Upon information and belief, as of the date of the APA, Defendant Corstar had in its books an account receivable on the Peter Mill account (the "Peter Mill Account Receivable").

73. Pursuant to the terms of the APA, the Peter Mill Account Receivable was transferred to and became the property of Plaintiff.

74. Upon information and belief, subsequent to the date of the APA, Defendants attempted, and are continuing to attempt, to collect and retain the Peter Mill Account Receivable, in the amount of at least $300,000, in breach of their duties under the APA.

75. Upon information and belief, subsequent to the date of the APA, Defendants attempted, and are continuing to attempt, to solicit the Peter Mill account away from Plaintiff, in breach of the APA.

76. Pursuant to the terms of the APA, all of Defendant Corstar's logos were transferred to Plaintiff, including logos used on Defendant Corstar's letterhead and envelopes.

77. Upon information and belief, Defendant Corstar continues to use, publish and advertise the logos acquired by Plaintiff under the APA, in breach of the APA.

78. Upon information and belief, subsequent to the date of the APA, Defendants attempted, and are continuing to attempt, to obtain confidential and proprietary information from Plaintiff's computer database, including information regarding Plaintiff's clients and accounts, without Plaintiff's consent.

79. Upon information and belief, Defendants secretly enlisted the aid of at least one of Plaintiff's employees in order to obtain the said confidential and proprietary information.

80. Defendants' improper actions above constitute breaches of the APA.

81. As a result of the foregoing, Plaintiff has suffered damages in the amount to be determined by the Court.

82. As a result of the foregoing, Plaintiff is also entitled to injunctive relief prohibiting Defendants from further ongoing violations of the APA.

### COUNT SEVEN

### CONVERSION

83. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 82 as if fully set forth herein.

84. Upon information and belief, subsequent to the date of the APA, Defendants collected and received monies on the Peter Mill Account Receivable.

85. The said monies are the property of Plaintiff.

86. Upon information and belief, Defendants intentionally and willfully exerted dominion over the Peter Mill Account Receivable for their own use, despite having

transferred the Peter Mill Account Receivable to Plaintiff pursuant to the express terms of the APA.

87. Upon information and belief, Defendants wrongfully converted the said monies from Plaintiff.

88. As a result of the foregoing, Plaintiff has suffered damages in an amount to be determined by the Court.

## COUNT EIGHT

## BREACH OF CONSULTING AGREEMENT

89. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 88 as if fully set forth herein.

90. On or about January 29, 2004, Plaintiff and Defendant Sitar entered into a consulting agreement (the "Consulting Agreement"; annexed hereto as **Exhibit E**).

91. Pursuant to the terms of the Consulting Agreement, Defendant Sitar agreed to provide "*sales and marketing efforts for the products and services of [Plaintiff]*" (the "Services"), in exchange for which Defendant Sitar would receive, as compensation, a commission based on completed sales to new customers or the sales of new products and services to existing customers,  in accordance with Plaintiff's commission schedule then in effect.

92. In addition, under the Consulting Agreement, Defendant Sitar was also to receive "other compensation" in the amount equal to the cost required to provide "family" health and medical insurance coverage ("Other Compensation") to Defendant Sitar's family.

93. Plaintiff has paid Other Compensation to Defendant Sitar.

94. Defendant Sitar has failed to perform the Services required in accordance with the terms of the Consulting Agreement.

95. In addition, as set forth in the other Counts above, Defendant Sitar breached his duty of loyalty, fidelity, good faith and fair dealing to Plaintiff.

96. Therefore, Defendant Sitar has breached the Consulting Agreement.

97. As a result of the foregoing, Plaintiff has suffered damages in an amount to be determined by the Court.

98. As a result of the foregoing, Plaintiff is also entitled to cancel the Consulting Agreement.

### COUNT NINE

### ACTION FOR AN ACCOUNTING

99. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 98 as if fully set forth herein.

100. By virtue of the foregoing, Plaintiff is entitled to an accounting of the income, expenses and liabilities of the Defendant Corstar from the date of the Conversion.

**WHEREFORE**, Plaintiff respectfully requests that this Court grant Plaintiff judgment as follows:

a. As to Count One, damages against Defendants in an amount to be determined by the Court, but not less than $99,450;

b. As to Count Two, damages against Defendants in an amount to be determined by the Court, but not less than $153,025;

c.  As to Count Three, damages against Defendants in an amount to be determined by the Court;

d.  As to Count Four, damages against Defendants in an amount to be determined by the Court;

e.  As to Count Five, damages against Defendants in an amount to be determined by the Court;

f.  As to Count Six, damages against Defendants in an amount to be determined by the Court, as well as injunctive relief prohibiting Defendants from further violations of the APA;

g.  As to Count Seven, damages against Defendants in an amount to be determined by the Court;

h.  As to Count Eight, damages against Defendants in an amount to be determined by the Court, and an Order of the Court declaring the Consulting Agreement to be cancelled;

i.  As to Count Nine, an Order of the Court ordering an accounting of the income, expenses and liabilities of Defendant Corstar from the date of the Conversion;

j.  As to all Counts, an Order of the Court granting Plaintiff its costs and expenses herein, including without limitation reasonable attorneys fees; and

k.  As to all Counts, an Order of the Court granting Plaintiff such other and further relief as the Court deems appropriate.

Dated:     White Plains, New York
           May 24, 2007

                        Corrigan & Baker, LLC
                        *Attorneys for Plaintiff*


                        By: Gregg S Baker (GB-5139)
                            1311 Mamaroneck Avenue
                            Suite 215
                            White Plains, New York 10605
                            (914) 468-0190

- 15 -